1
2
3
4                    UNITED STATES DISTRICT COURT
5                          DISTRICT OF NEVADA
6                                  * * *
7    TANYA SPURBECK,                            Case No. 2:20-cv-00346-RFB-NJK
8                              Plaintiff,                **ORDER**
9         v.
10   WYNDHAM WORLDWIDE, et. al.,
11                             Defendants.

## I.     INTRODUCTION

Before the Court for consideration are Defendants' Motion to Strike, ECF No. 62, Plaintiff's Motion in Limine, ECF No 116, Defendants' Motion to Strike [118] Reply, ECF No. 119, Defendants' Motion for Summary Judgment, ECF No. 121, Plaintiff's Motion to Extend Time, ECF No. 129., Plaintiff's Motion to Strike Exhibits, ECF No. 140, and Plaintiff's Motion for Sanctions, ECF No. 141.

## II.    PROCEDURAL BACKGROUND

Pro se plaintiff brings this action against Defendants Wyndham Destinations and Wyndham Vacation Ownership, alleging damages due to fraud, sex discrimination, sexual harassment, and disability discrimination, as well as intentional infliction of emotional distress, negligence, breach of contract, and fraud. Plaintiff filed suit in federal court on February 18, 2020. ECF No. 1. On February 21, 2020, Plaintiff filed an amended complaint. ECF No. 6. On March 23, 2020, Defendant filed a motion to dismiss the amended complaint. ECF No. 9. On November 24, 2020, the Court denied this motion to dismiss and allowed the Plaintiff to file a second amended complaint. ECF No. 38.

Plaintiff filed an amended complaint on December 9, 2020, ECF No. 42. Another amended complaint was filed on December 15, 2020. ECF No. 43. This is the operative complaint.

Defendants answered the complaint on January 6, 2021. ECF No. 50.

Plaintiff filed a motion for default judgment on January 18, 2021, ECF No. 54. This motion was denied by the Court on September 30, 2021. ECF No. 143.

On March 1, 2021, Defendants filed a Motion to Strike Plaintiff's demand for a jury trial. ECF No. 62. Plaintiff responded on March 2, 2021, ECF No. 63, and Defendants replied on March 9, 2021. ECF No. 66.

On June 2, 2021, Plaintiff filed a Motion in Limine to exclude her own deposition testimony, claiming that Defendants had abused the legal process and falsified testimony. ECF No. 116. Defendants responded on June 15, 2021, ECF No. 117, and Plaintiff replied on June 23, 2021. ECF No. 118.

On June 23, 2021, Defendants filed a Motion to Strike Plaintiff's reply to her Motion in Limine. ECF No. 119. Plaintiff responded on July 6, 2021. ECF No. 120. Defendants replied on July 13, 2021. ECF No. 126.

On July 9, 2021, Defendants filed a Motion for Summary Judgment. ECF No. 121. Plaintiff responded on August 23, 2021. ECF No. 137. Defendants replied on September 7, 2021. ECF No. 139.

On September 10, 2021, Plaintiff filed a Motion to Strike Exhibits in Defendants' Reply to their Summary Judgment Motion. ECF No. 140. Defendants responded on September 24, 2021. ECF No. 142. Plaintiffs replied on October 1, 2021. ECF No. 144.

On September 20, 2021, Plaintiff filed a Motion for Sanctions. ECF No. 141. Defendants responded on October 4, 2021. ECF No. 145. Plaintiff replied on October 7, 2021. ECF No. 146.

On October 22, 2021, the Court heard oral argument on the outstanding motions. ECF No. 148. A written order follows.

### III.   FACTUAL BACKGROUND

#### a.  Undisputed Facts

##### i.   Plaintiff's Employment with Wyndham Vacation Ownership

On November 27, 2017, Plaintiff was originally hired as a Discovery Sales Representative for WVO's Tropicana Resort Sales Center. This is a commission-based sales position, and the job

posting stated that the candidate should be "someone who wants to make $50,000-$100,000+!"

When Plaintiff began in this position, she underwent two weeks of training for both roles of a Discovery Sales Representative and a Frontline Sales Representative. Performance in these positions is primarily determined by their Volume Per Guest ("VPG"), which roughly translates to the eligible dollar value of the vacation ownership (timeshare) interest sold divided by the number of tours that the sales representative saw in that month.

During her training, Plaintiff was provided the Blvd Front Line Standards of Performance, which explicitly states, "New sales representatives falling below the minimum VPG expectation may be terminated," with the Minimum VPG as "$1,900" for each month. Moreover, "Any sales representative that drops below a $1,000 VPG at any time outside of the training period may be subject to immediate termination." Plaintiff signed this document on November 30, 2017.

Two weeks after she started, Plaintiff asked to transfer because she believed the role would not be able to make her the money she wanted to make. Wyndham Vacation Opportunities transferred Plaintiff to the Worldmark by Wyndham Boulevard location ("Blvd"). She began working there as a Frontline Sales Representative starting on January 19, 2018.

Plaintiff failed to make her sales quota in this role. Her VPG for February 2018 was $416.96, her VPG for March 2018 was $1,190.54, her VPG for April 2018 was $0, and her VPG for May 2018 was also $0. The minimum required VPG/month is $1,950. Wyndham Vacation Opportunities also had a policy whereby if a sales representative falls below $1000 VPG at any time outside of the training period, they may be subject to termination. Plaintiff was provided a copy of these policies during her training period.

Wyndham Vacation Opportunities interviewed her for a different position. She was ultimately not selected for a new position. Plaintiff was officially terminated on June 12, 2018 for "failure to meet performance expectations."

ii.   Plaintiff's OSHA and EEOC Processes

On June 21, 2018, Plaintiff filed a complaint with OSHA stating that she believed that she was terminated because she had expressed concerns about her safety regarding her placement near a fire extinguisher and an exit door.

Plaintiff filed an EEOC complaint against Wyndham Worldwide Corporation on August 10, 2018. On February 5, 2019, Plaintiff sent an email to the EEOC where she stated that, "I still can't understand how you can't investigate my case." The EEOC investigator responded, "Tanya, per our conversation today and based on the information that you and the company provided, the EEOC is unable to conclude that the information obtained establishes violations of the statutes…If you want to pursue your charge, you may do so on your own by filing in Federal District Court within 90 days of receiving your Right to Sue. If you do not file a lawsuit within the required 90-day period, your right to sue in the matter will expire and cannot be restored by the EEOC." In response to this email, and on that same day, Plaintiff responded, "Please issue me a Right to Sue letter so that I can take the respondent to court (file a lawsuit)." Notice of Right to Sue was sent to Plaintiff on February 7, 2019. The Notice of the Right to Sue indicates that "Your lawsuit under Title VII, the ADA, or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to use based on this charge will be lost." (emphasis in original).

Plaintiff did not file a lawsuit at that time. On March 12, 2019, Plaintiff sent the EEOC an email explaining that she filed a "new & now (complete and accurate) complaint" indicating that the new complaint had additional facts that Plaintiff had just come to terms with. Plaintiff submitted notice of a second charge of discrimination on March 21, 2019. On June 19, 2019, the EEOC sent Plaintiff a letter stating that her second charge was being closed because it was "a duplicate file to" the first charge.

On August 8, 2019, the EEOC sent Plaintiff another letter, where they stated, "[Y]ou asked that the Commission reconsider its findings and reopen the case for further investigation… [t]here were no indications that further investigation would disclose a violation of our statutes . . . the Commission cannot amend your charge or reopen your charge to investigate the new information."

On August 8, 2019, the EEOC wrote a letter that indicated that they did not find that further investigation would disclose a violation of statutes and that her right to sue was expired and could not be restored by EEOC. The EEOC also explained to Plaintiff that her Notice of Right to Sue had expired: "It is important to note that your letter did not extend or eliminate the statutory 90-

day filing period to pursue your case in federal court. Therefore, if you did not file a private lawsuit within 90 days of your receipt of the dismissal notice that was dated February 7, 2018 but issued on February 8, 2019[,] your right to sue based on the charge is lost and cannot be restored by EEOC." Plaintiff responded to the EEOC on August 16, 2019, stating, "As deemed in my rights to have a proper EEOC process that everyone else in America has received—except for me. I deserve it too."

On October 9, 2019, the EEOC sent a letter to Plaintiff stating:

> The additional information you have provided, along with the information that was obtained during the processing of the charge, was carefully considered before a final determination was made. There were no indications that further investigation would disclose a violation of our statutes. We have determined that no appropriate evidence has been overlooked or misinterpreted in evaluating your charge; therefore, we will not be reopening your case and completing any further investigation. It is important to note that a request for reconsideration does not extend or eliminate the statutory 90-day filing period if you choose to pursue your case in federal court. Therefore, if you did not file a private lawsuit within 90 days of your receipt of the February 7, 2018 final dismissal notice, your right to sue based on the charge may be lost and cannot be restored by EEOC.

Plaintiff responded to this letter in an email dated October 16, 2019, asking for an explanation as to the denial of her claim. On February 4, 2020, the EEOC responded to Plaintiff with a 10-page letter detailing the history of Plaintiff's dealings with the EEOC up until that time. They also explained that the EEOC had, "reviewed the information and evidence you and the Respondent provided, and determined there was insufficient evidence to establish violations of the statutes as you alleged in your charge."

> In this letter, the EEOC also discussed its reconsideration of Plaintiff's claims:

> Ms. Patricia Kane, Acting Director of the Las Vegas Local Office, addressed your concerns, advising you that EEOC would not reopen your charge in a letter she sent you, dated August 8, 2019. For your convenience, we are attaching a copy of Ms. Kane's August 8th letter as Attachment 2. Our records show you again requested EEOC to reopen your charge for additional investigation and provided additional information in a subsequent letter, dated August 22, 2019. In a letter to you, dated October 9, 2019, Ms. Kane advised you that she reviewed and considered the additional information you provided but EEOC would not reopen your charge because she determined EEOC did not overlook or misinterpret any appropriate evidence. For your convenience, we are attaching a copy of Ms. Kane's October 9th letter as Attachment 3.

> Apparently dissatisfied with Ms. Kane's multiple reviews of your previous requests for reconsideration, you sought this office's review as well. In response to your inquiry, we also conducted research to determine if you exercised your statutory rights to file your own private lawsuit in federal court based on your charge and, for reasons unknown to us,

confirmed you failed to file such a lawsuit against the Respondent. Under the statutes EEOC enforces, your requests for EEOC to reconsider its dismissal of your charge did not toll the statutory 90-day period within which you were required to file a private lawsuit based on your charge. If we are correct in concluding you did not file a private lawsuit based on your charge, any right you had to continue to pursue your allegations has now expired.

The EEOC goes on to recount the allegations and evidence for Plaintiff's claims of sex discrimination, sexual harassment, and disability discriminatory, stating that they found "no relevant, persuasive evidence you provided which rebutted Respondent's defenses. Indeed, we found no evidence Respondent treated you differently because of your sex, or disability, or were sexually harassed." In this letter, the EEOC went on to explain the underlying law for each claim and why the evidence failed to establish the elements of each claim. They went on to say: "Under our statutes, EEOC does not have the statutory authority to make the final determination as to whether discrimination occurred. Rather, Congress vested the federal courts with exclusive authority to make that determination." They then explained again that her sole remedy for dissatisfaction with the EEOC's outcome was to sue within the statutory limitations period. Because Plaintiff did not sue within that time, they finally explained that Plaintiff's "right to bring suit on your charge expired…" In her deposition, Plaintiff admitted to receiving the correspondence discussed above.

Subsequently, Plaintiff filed this suit.

**b. Disputed Facts**

Plaintiff uses the statement of facts in her response to Defendants' motion for summary judgment to discuss the admissibility of Defendants' exhibits. It is unclear from the face of the response whether Plaintiff is alleging a genuine dispute of material fact such that this case must go to trial or whether Plaintiff uses her motion as essentially a competing motion for summary judgment, such that she aims to apply the facts and evidence she has provided to receive summary judgment as a matter of law. Because Plaintiff is representing herself pro se, her document will be liberally construed. See Woods v. Carey, 525 F.3d 886, 889-890 (9th Cir. 2008) ("A document filed pro se is to be liberally construed…") (internal citations omitted). The Court will therefore consider both whether a genuine dispute of material fact exists and whether Plaintiff is entitled to

- 6 -

1  summary judgment in her favor on any of her claims.

2

3     **IV.     LEGAL STANDARD**

4          The Court will first turn to the motion for summary judgment. Summary judgment is

5  appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file,

6  together with the affidavits, if any, show "that there is no genuine dispute as to any material fact

7  and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); accord Celotex

8  Corp. v. Catrett, 477 U.S. 317, 322(1986).

9

10          When considering the propriety of summary judgment, the court views all facts and draws

11  all inferences in the light most favorable to the nonmoving party.  Gonzalez v. City of Anaheim,

12  747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must

13  do more than simply show that there is some metaphysical doubt as to the material facts …. Where

14  the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

15  there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original)

16

17  (internal quotation marks omitted).

18          It is improper for the Court to resolve genuine factual disputes or make credibility

19  determinations at the summary judgment stage.  Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th

20  Cir. 2017) (citations omitted).

21     **V.     DISCUSSION**

22          Defendants move for summary judgment as to all of Plaintiff's claims. Plaintiff objects,

23

24  arguing either that the case must proceed to a trial, or in the alternative, that she is entitled to

25  summary judgment in her favor. Plaintiff seeks injunctive relief and damages commensurate with

26  the alleged legal violations at issue.

27

28          a.   Title VII and Americans with Disabilities Act Claims

- 7 -

Plaintiff's amended complaint contains allegations of violations of Title VII including sex discrimination, sexual harassment, and retaliation claims and violations of the Americans with Disabilities Act. Defendants argues that all of these claims are barred by the de facto 90-day statute of limitations which started with the issuance of the EEOC's "Right to Sue" letter.

*i.   Statute of Limitations*

Both the Americans with Disabilities Act, see 42 U.S.C. § 12101, et. seq., and Title VII of the Civil Rights Act of 1964, see 42 U.S.C. § 2000e et. seq., vest federal courts with plenary powers to enforce its statutory requirements, but also specifies with precision the jurisdictional prerequisites that an individual must satisfy before they are entitled to institute a lawsuit. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974). One such prerequisite is filing a charge with the Equal Employment Opportunity Commission (EEOC) or equivalent state agency. There are effectively two limitations periods for Title VII and ADA claims. First, a claimant must exhaust administrative remedies by filing a charge with the EEOC or equivalent state agency within 180 days of the alleged unlawful employment practice. See 42 U.S.C. 2000e-5(e)(1), see also Scott v. Gino Morena Enters., LLC, 888 F.3d 1101, 1106 (9th Cir. 2018). Then, after exhausting administrative remedies, a claimant has 90 days to file a civil action. See Id. Claims under both Title VII and the ADA as subject to these jurisdictional prerequisites. Alexander, 415 U.S. at 47 (describing requirements for Title VII claims under 42 U.S.C. § 2000e-5); 42 U.S.C. § 12117 (The ADA expressly incorporates Title VII's procedural requirements).

Under clearly established law, this 90-day period is a statute of limitations. Valenzuela v. Kraft, Inc., 801 F.2d 1170, 1174 (9th Cir. 1986) ("Taken as a whole, these cases firmly establish that the 90-day filing period is a statute of limitations…); Edwards v. Occidental Chemical Corp., 892 F.2d 1442, 1445 (9th Cir. 1990); Scholar v. Pacific Bell, 963 F.2d 264, 267 (9th Cir. 1992).

1
2
3
4
5
6

The statute of limitations begins to run on the date on which a right-to-sue letter is delivered to the claimant. See Rhodes v. Raytheon Co., 555 Fed. Appx. 665, 667 (9th Cir. 2014). If a recipient is not sure when the notice arrived, the Court presumes both that it was mailed on its date of issue and that it arrived three days later, including weekends. Payan v. Aramark Mgmt. Servs. Ltd. P'ship, 495 F.3d 1119, 1123-26 (9th Cir. 2007).

7
8
9
10
11
12

The facts surrounding the 90-day period are clear from the record: Plaintiff did not file a civil action until well after the 90-day period had elapsed. Plaintiff's Notice of Right to Sue was mailed on February 7, 2019 after Plaintiff requested her Notice of Right to Sue via email. Plaintiff did not file suit until February 18, 2020, over a year after the Notice was mailed. Therefore, it is abundantly clear that the Plaintiff failed to file her claim within the statute of limitations.

13

*ii.   Equitable Tolling*

14
15
16
17
18
19
20
21
22
23
24
25
26

However, the 90-day filing period is a statute of limitations subject to equitable tolling in appropriate circumstances. Valenzuela, 801 F.2d at 1174. The Ninth Circuit generally recognizes equitable tolling claims in two circumstances: (1) where the Plaintiff was prevented from asserting their claims by wrongful conduct on the part of the defendant and (2) in extraordinary circumstances beyond the Plaintiff's control made it "impossible to file the claims on time." Seattle Audubon Soc. v. Robertson, 931 F.2d 590, 595 (9th Cir. 1991). However, equitable tolling in the employment discrimination context "focuses on whether there is an excusable delay by the plaintiff and does not depend on wrongful conduct by the Defendant" and whether a claim was diligently pursued by Plaintiff. Veronda v. Cal. Dep't of Forestry & Fire Prot., 11 Fed. Appx. 731, 735 (9th Cir. 2001). This is because a generally broader application of equitable tolling is consistent with the remedial purpose of employment discrimination statutory schemes. See Id.

27
28

While Plaintiff does not explicitly argue that her claims should be equitably tolled, Plaintiff

1  makes several allegations that could go towards establishing an excusable delay. She argues she

2  was confused by the EEOC's process and that her mental health condition prevented her from

3  understanding and/or pursuing the claims within a 90-day period. See ECF No. 137. In order to

4  demonstrate that a mental impairment was the cause of delay, a plaintiff must show either that

5  plaintiff was personally unable to rationally or factually understand the need to timely file or that

6  the plaintiff's mental state rendered them unable to personally prepare and effectuate a filing. See

7  Milam v. Harrington, 953 F.3d 1128, 1132 (9th Cir. 2020) (discussing mental impairment and

8  equitable tolling in the habeas context). Equitable tolling for a mental impairment does not "require

9  a literal impossibility" but instead only a "showing that the mental impairment was a but-for cause

10  of any delay." Id.

11         Plaintiff's mental health claims could potentially go to two aspects of excusable neglect.

12  First, at oral argument and in several of her emails, Plaintiff indicates that she was confused and

13  did not understand the EEOC process, alleging that she did not understand the 90-day statute of

14  limitations issues.

15         While the record does support Plaintiff's contentions that she suffered from various mental

16  health conditions including generalized anxiety disorder, post-traumatic stress disorder,

17  depression, and ADHD, see ECF No. 138-1 at 18, 29, there is no evidence in the record to indicate

18  that these conditions are the but-for cause of delay. The documents offered in evidence of

19  Plaintiff's diagnoses are both dated July 29, 2021 and the second one indicates that treatment of

20  the Plaintiff commenced April 19, 2019, during the period of time in which Plaintiff was going

21  through the EEOC process. However, these documents offer no evidence of excusable delay, nor

22  do they support an inference of excusable delay. These documents indicate that during the period

23  at issue, Plaintiff was regularly taking medication to combat her ADHD. There are no allegations

or evidence to support the contention that her ADHD or other mental health diagnoses were the but-for cause of delay.

Additionally, as discussed at length in the Undisputed Facts section, the EEOC made it clear to Plaintiff that there was a 90-day statute of limitations for Plaintiff to bring a civil action. Prior to issuing the Notice of the Right to Sue, the EEOC investigator indicated to Plaintiff in an email that "If you do want to pursue your charge, you may do so on your own by filing in Federal District Court within 90 days of receiving your Right to Sue. If you do not file your lawsuit within the required 90-day period, your right to sue in the matter will expire and cannot be restored by the EEOC." ECF No. 121-16. Plaintiff subsequently responded, "Please issue me a Right to Sue letter so that I can take the respondent to court (file a lawsuit)." Id. Plaintiff does not deny that she received the Notice of Right to Sue. However, instead of acting on that by filing a civil action in federal court, Plaintiff filed a second, identical complaint to the EEOC.

Further, based on the undisputed facts, there is no indication that Plaintiff misunderstood the distinction that the EEOC drew between the EEOC's findings related to violations of the various statutes and the Notice of the Right to Sue letter. In fact, the record evinces a clear understanding by the Plaintiff that the Right to Sue would grant her a limited opportunity to pursue her claims in federal court. On February 5, 2019, an EEOC investigator wrote to Plaintiff: "Tanya, per our conversation today and based on the information that you and the company provided, the EEOC is unable to conclude that the information obtained establishes violations of the statutes…If you want to pursue your charge, you may do so on your own by filing in Federal District Court within 90 days of receiving your Right to Sue. If you do not file a lawsuit within the required 90-day period, your right to sue in the matter will expire and cannot be restored by the EEOC." See Section III(a), supra. In response to this email, and on that same day, Plaintiff responded, "Please

issue me a Right to Sue letter so that I can take the respondent to court (file a lawsuit)." <u>See</u> <u>Id</u>. Notice of Right to Sue was sent to Plaintiff on February 7, 2019. The Notice of the Right to Sue indicates that "Your lawsuit under Title VII, the ADA, or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to use based on this charge will be lost." <u>See</u> <u>Id</u>.  All subsequent correspondence between the EEOC and Plaintiff involves the EEOC's findings on various alleged violations of statute. In no subsequent correspondence does Plaintiff inquire as to the running of the statute of limitations, ask how or if it may be tolled pursuant to her ongoing inquires as to statutory violations, or ask for any sort of consideration or extension of the limitations period pursuant to her ongoing claims. Accordingly, Plaintiff's contention that she did not understand the statute of limitations is a mere allegation unsupported by the record. Because of this, the record does not support excusable neglect for the purposes of an equitable tolling argument.

Second, Plaintiff makes reference in her response to Defendants' Motion for Summary Judgment to her "mind" being "frozen" and to not recognizing the existence of important facts in her case due to the traumatic circumstances of her experience. <u>See</u> ECF No. 137 at 12. She also makes assorted references to repeated dissociation from her experiences while employed with Defendant throughout the record. While the Court is sympathetic to Plaintiff's mental health challenges, there is no evidence in the record of the occurrence of these events beyond Plaintiff's bare assertions. This cannot be a basis for excusable delay for the purposes of an equitable tolling argument.

Because nothing in the record indicates conclusively that Plaintiff faced an "extraordinary circumstance" that made it "impossible to file the claims on time," <u>Seattle Audubon Soc. v. Robertson</u>, 931 F.2d 590, 595 (9th Cir. 1991), equitable tolling is not available to the Plaintiff in

1    this situation. Accordingly, Plaintiff's Title VII and ADA claims are barred by statute.[1]

2              b.   Equal Pay Act Claim

3         Plaintiff also alleges that Defendants allowed male workers to receive "higher pay for the

4    same work" in violation of the Equal Pay Act. See ECF No. 42 at 6-11. Plaintiff's claim is based

5

6    primarily on allegations that Defendants gave male workers more opportunities to sell and more

7    "perks" to help them. Defendants argue that Plaintiff's Equal Pay Act claim is barred by the statute

8    of limitations or, in the alternative, that the claim cannot succeed on its merits because Plaintiff

9
     received the same commission rate as males.
10

11        Unlike the Title VII and ADA claims, no administrative exhaustion is required under the

12   Equal Pay Act. Bartelt v. Berlitz School of Languages, Inc., 698 F.2d 1003, 1007 (9th Cir. 1983).

13   In relevant part, the Equal Pay Act provides that:

14        No employer having employees subject to any provisions of this section shall discriminate,
          within any establishment in which such employees are employed, between employees on the basis
15        of sex by paying wages to employees in such establishment at a rate less than the rate at which he
          pays wages to employees of the opposite sex in such establishment for equal work on jobs the
16        performance of which requires equal skill, effort, and responsibility, and which are performed
          under similar working conditions…
17

18        29 U.S.C. § 206(d)(1). To make a case out under the Equal Pay Act, a plaintiff must prove

19   "that an employer is paying different wages to employees of the opposite sex for equal work."

20   Hein v. Oregon College of Education, 718 F.2d 910, 913 (9th Cir. 1983). In an Equal Pay Act case,

21   the plaintiff has the burden of establishing a prima facie case of discrimination by showing that

22
     employees of the opposite sex were paid different wages for equal work. Stanley v. University of
23

24   S. California, 178 F.3d 1069, 1074 (9th Cir. 1999). To make out a prima facie case, the plaintiff

25   bears the burden of showing that the jobs being compared are "substantially equal." See Id., see

26

27   _____

28   [1] Plaintiff's Title VII claims barred by the statute of limitation include claims related to sexual
     harassment, retaliation, sex discrimination.

- 13 -

also 29 C.F.R. § 1620.13(a); see also Spaulding v. University of Wash., 740 F.2d 686, 697 (9th Cir. 1984), overruled on other grounds, Atonio v. Wards Cove Packing Co., Inc., 810 F.2d 1477 (9th Cir. 1987) (en banc).

Once the Plaintiff establishes the prima facie case, the burden shifts to employer to show that the differential is justified by one of the Act's four exceptions. Corning Glass Works v. Brennan, 417 U.S. 188, 196 (1974). Different payment to employees of opposite sexes is exempt from regulation under the Equal Pay Act if it "is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). The Ninth Circuit has not directly addressed the scope of the third exception, but the Sixth Circuit has reasoned that the exception means that "there is no discrimination if two employees received the same pay rate, but one receives more total compensation because he or she produces more." Bence v. Detroit Health Corp., 712 F.2d 1024, 1029 (6th Cir. 1983).

Plaintiff's Equal Pay Act Claim fails on its merits; Plaintiff has not met her burden of establishing a prima facie case of discrimination by showing that employees of the opposite sex were paid different wages for equal work. Plaintiff did not submit any evidence in direct support of this contention. Evidence provided by the Defendants indicates that all Sales Representatives were paid the same compensation. See ECF No. 124-3. This document explains that everyone with the Sale Discovery Representative position was paid a base compensation to meet the minimum wage requirement for the number of hours worked, a "base commission" of a set rate of their "net commissionable volume" and the potential for a bonus for monthly net sales volume based on a hurdle structure.

Indeed, Plaintiff does not claim that there was a differential rate based on sex, but rather

that her male counterparts were given more perks and opportunities which resulted in higher rates of pay. However, Plaintiff fails to demonstrate that this is the case. She argues that one of her male colleagues, Ruben Kelly, was preferentially made eligible for overtime with "premium pay" which resulted in "higher performance and higher pay." See ECF No. 137 at 24. In support of this argument, she references Plaintiff's Exhibits 75-79 and 108-115. ECF No. 138. There is no evidence in the record to support the contention that Ruben Kelly was singled out for "premium pay." None of these documents referenced provide information in direct support of this claim. Exhibit 77 contains a series of messages exchanged between Plaintiff and another co-worker on July 19, 2018 discussing the inconsistent nature of the compensation due to commissions. Her co-worker says "…also you know when you are going to hit the bonus suddenly you have 'cancellations' and then you don't hit the bonus" to which Plaintiff responds, "Ruben never had that problem." This is, however, unsupported anecdotal evidence from the Plaintiff herself and does not support the inference that there is a pay disparity based on gender. Exhibits 109, 110, and 111 contain messages between the Plaintiff and Ruben Kelly. In these messages, Mr. Kelly communicates to Plaintiff that he is working and discusses several deals he has successfully completed. None of these exhibits reference or could be inferred to reference differential wages or the opportunity to earn commission on the basis of sex or any other discriminatory basis. Exhibit 114 is a chart prepared by Plaintiff, presumably on the basis of discovery in this case, that describes retention rate of male and female employees over the course of approximately four months in 2018. This is not evidence which could support a claim than an employer is "paying different wages to employees of the opposite sex for equal work." See Hein v. Oregon College of Education, 718 F.2d 910, 913 (9th Cir. 1983). Because Plaintiff did not set forth any evidence of differential wages between men and woman, she did not establish a prima facie case for violation of the Equal

Pay Act.

Even if Plaintiff had or was able to show evidence of a pay disparity, she would need to contend with Defendants' evidence that indicates that Sales Representatives were paid the same commission rates. See ECF No. 124-3. If a Plaintiff establishes a prima facie case under 29 U.S.C. § 206(d)(1), then the burden shifts to the employer to prove by a preponderance of the evidence that its compensation system is justified by one or more of the four exceptions. Corning Glass Works, 417 U.S. at 196-97. In their motion for summary judgment, Defendants have asserted that they are exempt under the third exception because their commission-based compensation plan is "a system which measures earnings by quantity or quality of production." Further, they have provided evidence that "employees received the same" commission rate by providing the compensation schedule for all those with Plaintiff's position. See ECF No. 124-3. This establishes that even if there were a pay disparity, it would likely fall under the Equal Pay Act's third exception. While the Court acknowledges the difficulty of documenting some of the types of challenges women in the workplace face, there is no evidence before this Court that would support even the inference of an Equal Pay Act claim. Accordingly, summary judgement is granted to Defendants on the Equal Pay Act claims.

Finally, under 29 U.S.C. § 215(a)(3) it is unlawful for an employer to discharge or discriminate against an employee "because such employee has filed any complaint or institute or caused to be institute any proceeding under to related to" the Equal Pay Act. To make out a prima facie case of retaliation, an employee must show that (1) the employee engaged in a protected activity; (2) the employee's employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). The record does not indicate that Plaintiff submitted any charge

1    of unequal pay during her employment. Therefore, Plaintiff cannot make out a prima facie case of

2    retaliation.[2]

3         c.   State Law Claims

4

5         In addition to her federal claims, Plaintiff pleads several causes of action under Nevada

6    state law: fraud/fraudulent inducement, breach of contract, intentional infliction of emotional

7    distress, and negligence. Defendant argues that these claims are time-barred (except for breach of

8    contract) and fail as matter of law.

9              i.   Fraud

10

11        Under Nevada law, a plaintiff alleging a claim of fraud must prove, by clear and convincing

12   evidence that (1) a false representation was made by the Defendant, (2) Defendant's knowledge or

13   belief that its representation was false or that defendant has an insufficient basis of information for

14   making the representation, (3) defendant intended to induce plaintiff to act or refrain from acting

15   upon the misrepresentation, and (4) damage to the plaintiff as a result of relying on the

16   misrepresentation. See Barmettler v. Reno Air, Inc., 95 P.2d 1382, 1386 (Nev. 1998).

17

18        The Court finds that there is no evidence in the record to support a claim of fraud. Plaintiff's

19   fraud claim is premised upon a job description for a "Discovery Representative at Tropicana

20   Avenue in Las Vegas, NV" which includes the description that "we need someone who wants to

21   make $50,000-$100,000+!" ECF No. 121-13. Plaintiff alleges this is a representation that "Plaintiff

22   would make at least $50,000 a year." ECF No. 42 at 3. However, the evidence relied upon by

23   Plaintiff does not support an inference that Defendants made a representation that Plaintiff would

24   make at least $50,000 a year and there is no other evidence that would support such a

25

26

27

28   [2] Plaintiff includes the Fair Labor Standards Act in the caption of her second cause of action but
     does not appear to plead any claims underneath the statute. Accordingly, Plaintiff has not properly
     alleged a cause of action under the Fair Labor Standards Act.

representation. Further, Plaintiff was employed by Defendants for much less than a year: indeed, she only worked in the role that corresponds with the above job description for a little over a month before she asked to transfer. Because no false representation was made by the Defendant, Plaintiff's fraud claim fails.

### ii.    Breach of Contract

Under Nevada law, breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987). To establish breach of contract, a plaintiff must show: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." Saini v. Int'l Game Tech., 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing Richardson v. Jones, 1 Nev. 405 (Nev. 1865))

Plaintiff was an at-will employee. ECF No. 124-8. ("Every employee is considered to be an 'employee-at-will.' At-will employees do not have a contractual right or obligation to remain employed with the Company for any specific period of time. Either the employee or the Company may terminate employment at any time, with or without notice, and with our without any cause.") Under Nevada law, there is no claim for breach of contract where the employee is an at-will employee. Martin v. Sears, Roebuck & Co., 899 P.2d 551, 554 (Nev. 1995). Because of this, Plaintiff has no cognizable claim for breach of contract as a matter of law.

### iii.    Intentional Infliction of Emotional Distress

Under Nevada law, a plaintiff alleging a claim of intentional infliction of emotional distress must establish that defendants (1) engaged in extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) that the plaintiff suffered severe or extreme emotional distress; and (3) that actual or proximate causation exists between defendant's conduct and plaintiff's injury. Star v. Rabello, 625 P.2d 90, 91-92 (Nev. 1981).

Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community. Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998).

The Court finds that there is no evidence in the record to support the contention that any individual acted with the intent to cause emotional distress or was even indifferent to known distress. The Court therefore grants summary judgment in favor of the Defendants as to this claim.

### iv.  Negligence

Under Nevada law, in order to state a claim for negligence, a Plaintiff must show (1) that the defendant owed the Plaintiff a duty of care, (2) that the defendant breached that duty, (3) that breach of the duty caused harm to the plaintiff that was reasonably foreseeable, and (4) damages. Butler v. Bayer, 168 P.3d 1055, 1065 (Nev. 2007).

Plaintiff claims that Defendants were negligent in creating a work environment that fostered an atmosphere of harassment and allowed for Plaintiff to be harassed with impunity. There is no evidence in the record to support the claim that Defendants knew or should have known of the harassment while Plaintiff was employed with Defendants or that Plaintiff ever reported her experience to the Defendant. As a result of this lack of evidence to support the contention that there was a breach of a duty, the Court grants summary judgment in favor of the Defendant.

Accordingly, the Court grants summary judgement on all claims in favor of Defendants: Plaintiff's Title VII and ADA claims are barred by the statute of limitations and all other claims fail either as a matter of law or due to lack of evidence to support keep elements of the prima facie case.

### d.  Additional Outstanding Motions

#### i.  Motion to Strike (ECF No. 62)

Defendants filed a motion to strike Plaintiff's jury trial demand, claiming that she had previously waived her right to a jury trial. The Court finds that this motion is moot in light of the summary judgment holding above.

*ii.   Motion in Limine (ECF No. 116), Motion to Strike (ECF No. 119)*

Plaintiff filed a motion in limine to exclude her own deposition testimony claiming that Defendant's altered the videotape and falsified evidence. A motion in limine is premature at this stage in litigation, as Plaintiff is aiming to have her testimony excluded for consideration in dispositive motion practice, not for trial. See Abbey v. City of Reno, 2014 U.S. Dist. LEXIS 62387, *3 (D. Nev. 2014) ("Generally, a motion in limine should not be adjudicated until the eve of trial and after a pre-trial order has been filed. See Jones v. Harris, 665 F. Supp. 2d 384 (S.D.N.Y. 2009). Here, the parties have not yet filed a pre-trial order."). The Court therefore construes Plaintiff's motion as a motion to strike.

District courts have inherent power to control their own dockets, including the power "to determine what appears in the court's records" and to strike items from the docket to address conduct that is improper but does not warrant dismissal. Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404-05 (9th Cir. 2010). Whether to grant a motion to strike lies within the discretion of the district court. Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010); Novva Ausrustung Grp., Inc. v. Kajioka, No. 2:17-cv-01293-RFB-VCF, 2017 U.S. Dist. LEXIS 108614, at *5-6 (D. Nev. July 13, 2017).

There is no evidence in the record to support Plaintiff's claims that Defendants have altered or falsified her testimony. The Motion to Strike (ECF No. 116) is denied. Accordingly, Defendant's Motion to Strike Plaintiff's Reply (ECF No. 119) is also denied as moot.

*iii.   Motion to Strike (ECF No. 140)*

Plaintiff files a motion to strike exhibits offered in Defendant's Reply to their Motion for Summary Judgment on the basis that they contain lies. As discussed above, whether to grant a motion to strike lies within the discretion of the district court. Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010); Novva Ausrustung Grp., Inc. v. Kajioka, No. 2:17-cv-01293-RFB-VCF, 2017 U.S. Dist. LEXIS 108614, at *5-6 (D. Nev. July 13, 2017). The Court finds no evidence to support the contention that these exhibits contain and no other grounds upon which to strike these exhibits. Accordingly, this motion is denied.

*iv.   Motion for Sanctions (ECF No. 141).*

Plaintiff files a motion for sanctions on the grounds that Defendants willfully violated multiple court orders. She additionally requests that the Court decline to consider Defendants' Motion for Summary Judgment. Defendants oppose the motion arguing that Plaintiff is confused regarding the timeline of litigation and the direction of the Court.

"The central purpose of Rule 11 is to deter baseless filings in district court." Smith v. Ricks, 31 F.3d 1478, 1488 (9th Cir. 1994). To further that purpose, Rule 11 imposes certain requirements on representations made by an attorney upon any pleading, written motion, or other paper presented to federal court, including the representation that "the factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(3).

The standard of objective reasonableness governs the imposition of sanctions under Rule 11. Conn v. Borjorquez, 967 F.2d 1418, 1421 (9th Cir. 1992). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." Operating Engineers Pension Trust v. A-C Co., 859 F.2d 1336, 1345 (9th Cir. 1988). Imposition of sanctions under Rule 11 is discretionary, not mandatory. Moore v. Local 569 of the IBEW, 53 F.3d 1054, 1058 (9th Cir. 1995).

The Court finds no basis for issuing sanctions against the Defendant in this matter. Defendant has not acted in an objectively unreasonable manner and have properly used discretion to file one complete motion for summary judgment, rather than two partial motions. There is no evidence that Defendants' attorneys' have violated the requirements of Rule 11.

The Court also notes Defendants' request for fees for their opposition the Motion for Sanctions. The Ninth Circuit affords trial courts broad discretion in determining the reasonableness of costs and fees. Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992). Here, while Plaintiff's motion lacks merit, in the context in this case, her confusion is not unreasonable. Therefore, the Court denies Defendants' request for fees.

v.   Motion for Defendant's Disclosure

Plaintiff's motion for a corporate disclosure statement is also denied. ECF No. 149. This issue was previously dealt with in the Order at ECF No. 105. There are no allegations by Plaintiff that anything has changed to require reconsideration of the Court's prior order.

I.   **CONCLUSION**

1    **IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (ECF

2    No. 121) is GRANTED in full consistent with this order.

3    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (ECF No. 62) and

4    Defendant's Motion to Strike (ECF No. 119) are DENIED as moot.

5    **IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine (ECF No. 116),

6    Plaintiff's Motion to Strike (ECF No. 140), and Plaintiff's Motion for Sanctions (ECF No. 141)

7    are DENIED with prejudice.

8    **IT IS FURTHER ORDERED** that Plaintiff's Motion for Defendant's Disclosure (ECF

9    No. 149) is DENIED with prejudice.

10   The Clerk of the Court is directed to close this case.

11

12   DATED: March 9, 2022.

13

14   _____

15   **RICHARD F. BOULWARE, II**
     **UNITED STATES DISTRICT JUDGE**

16

17

18

19

20

21

22

23

24

25

26

27

28